55 N.J. Super. 132 (1959)
150 A.2d 63
JOHN R. HANKINS AND ELSIE T. HANKINS, PLAINTIFFS-RESPONDENTS,
v.
BOROUGH OF ROCKLEIGH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1959.
Decided April 3, 1959.
*133 Before Judges CONFORD, FREUND and HANEMAN.
Mr. James A. Major argued the cause for defendant-appellant (Mr. Everett I. Smith, on the brief).
Mr. William V. Breslin argued the cause for plaintiffs-respondents (Mr. William J. Scanlon, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the defendant from a final judgment of the Law Division "declaring ordinances 3-57-1 and 1-58-1 of the Borough of Rockleigh arbitrary, discriminatory and having no relation to the general welfare of the community" and directing that a building permit be issued to the plaintiffs for the construction of a dwelling in accordance with plans approved by the local planning board. The ordinances are amendments to the local "building zone" ordinance, which apparently includes a building code and zoning use regulation.
The Borough of Rockleigh is located in the northeast corner of Bergen County, New Jersey, adjacent to the New York state line. It is about one square mile in area, and has 37 homes and a population of about 150 people. In the last ten years only three houses have been constructed in the borough. It was testified that approximately 80% of the houses in Rockleigh are over 50 years old. We requested and, with the consent of the respective attorneys, have received a map showing the three principal roads passing through the borough and the location and architectural style of the various buildings. The map, together with its legend, discloses which buildings have been constructed within the last three and seven years, respectively. *134 The map shows that, all told, Rockleigh has about 60 structures and that, of these, at least 11 are modern-style buildings constructed in the last three years.
Rockleigh's zoning ordinance creates three zones: "A" residential (two-acre minimum), "B" field and country club area, and "C" light industry.
Plaintiffs own property on Piermont Road in the "A" zone. On February 10, 1957 plaintiffs submitted plans to the chairman of the building committee for a proposed modern two-story dwelling with a partial flat roof. After suggested changes were made, the plans were approved by the planning board on April 30, 1957. On April 8, 1957 the zoning ordinance amendment in question, 3-57-1, was adopted by the local legislative body to be effective April 18, 1957. Subsequently, on May 20, 1957 when the plans were submitted to the mayor and council, they were rejected, apparently on the basis of amendment 3-57-1. Plaintiffs thereupon filed the present complaint.
The pertinent part of the amended ordinance reads as follows:

"Article III
Section 7(g): Architectural Design  The architectural design of all new houses and other buildings in the Borough of Rockleigh, or old houses or buildings that may be renovated or reconstructed, shall be subject to the approval of the Planning Board and of the Mayor and Council of the Borough of Rockleigh. Such design may be of early American, or of other architectural style conforming with the existing residential architecture and with the rural surroundings in the Borough, and acceptable to the Planning Board and to the Mayor and Council of the Borough of Rockleigh."
In February 1958 the borough adopted another amendment to the building zone ordinance, known as 1-58-1 which provides standards for roofs. It in effect prohibits a modern flat roof such as that on plaintiffs' proposed house.
Within 400 feet of plaintiffs' property are a gas station in a modern building, a delicatessen in a conventional home converted into a store, and an industrial building with a flat roof. Adjoining the Hankins' property is the Bergen *135 County golf course with a recently-constructed modern-style club house. Nearby is a commercial swimming pool with a field club house and the St. Joseph's Children's Village consisting of a group of buildings; except for the chapel, these structures were recently constructed and have flat roofs.
Plaintiffs instituted this action in lieu of prerogative writs to compel issuance of a building permit for their proposed one-family modern-style dwelling and to have the first amendatory zoning ordinance declared void. The pretrial order amends the complaint to extend the attack to the second amendment as well.
Plaintiffs' challenge to the amended ordinances is based upon three grounds: (a) the restriction of architectural design is unreasonable in the light of the actual character of all of the structures now existing in the municipality; (b) there is an absence of proper standards to control the administrative authorities in passing upon applications for building permits; and (c) the amended ordinances were adopted in bad faith to single out plaintiffs for discriminatory action.
At the trial Philip Bucknell, chairman of Rockleigh's planning board, testified as follows:
"A. There are four or five houses which are typical Dutch Colonial. There are some within the broad category of early American. There are several that are Victorian and one or two that are conventional, comparatively modern type buildings, but strictly conventional, and conforming with the basic field of remaining architecture.

* * * * * * * *
A. We have been working for two and a half years on establishing a new ordinance which would protect the things we have and we have from time to time introduced amendments to preserve and spell out the things that we wish and that which we do not wish.
Q. Did you have any professional assistance with respect to this? Answer that yes or no. A. No, sir.

* * * * * * * *
Q. Those houses over fifty years of age which you said were over eighty per cent of the homes, what type of design were they? A. Some early American, some Dutch colonial, some Victorian and some are comparatively modern design conforming with the feeling.
Q. Isn't it true that in at least fifty per cent of those older homes, there have been additions with flat roofs?

* * * * * * * *
*136 A. There have been many such additions. I don't know whether fifty per cent 
Q. There are many additions to the older homes with the additions having a flat roof, is that not correct? A. Yes, sir.

* * * * * * * *
Q. Isn't it true that as you said on cross-examination, on examination by Mr. Major, about two and a half years ago some of the people got together and decided they wanted to protect what they had in Rockleigh? A. Yes, sir.
Q. And by that, you meant you wanted to preserve the interests of those who were there and the types of homes they had, isn't that correct? A. Yes, sir."
The trial judge found that under the present status of the law the police power does not encompass the regulation of aesthetics alone but that such regulation could attend the adoption of a zoning ordinance designed to further the general welfare of the community in other, recognized respects. Finding the ordinances in question to have been adopted purely for aesthetic reasons, "to keep the town as it was," he held the ordinances arbitrary and discriminatory and ordered the issuance of a permit. The municipality appeals.
The briefs of the parties are largely devoted to the question whether zoning ordinances based exclusively on aesthetic considerations can be sustained as promotive of the "general welfare" as the term is used in R.S. 40:55-32. The sufficiency of standards is also argued, plaintiffs contending that the ordinance's "acceptable to" phrase confers an unfettered discretion upon borough officials. In addition, plaintiffs challenge as an insufficient standard the "early American" architecture provision and argue that this norm could be construed as authorizing a tepee, adobe, log cabin, Cape Cod, New England, Dutch colonial, or Pennsylvania Dutch architectural design.
We find it unnecessary to pass on any of these questions. We are of the opinion that the judgment below should be affirmed on the single ground that a denial of the light of the actual physical development of the municipality, and that the prohibitory provisions of the amenda- the permit would be clearly and palpably unreasonable in *137 tory ordinances are so plainly unreasonable as not to warrant application of the ordinarily applicable rule that the objector should first seek relief before the board of adjustment. See Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 370 (1952). Insofar as the ordinances may be invoked as authorization for the disapproval by municipal officials of building plans contemplating an architectural style not in conformity with "early American" design or "of other architectural style conforming with the existing residential architecture," they are clearly unreasonable and arbitrary as applied to plaintiffs' property.
This is an extremely small community in area. Half the old-style houses are already partly out of their original architectural design because of the addition of flat-roofed extensions. There are in existence almost as many structures (of all kinds) fully out of character with the architectural restrictions for dwellings set forth in the ordinance as those which comply with them. Whatever new homes have been erected in the municipality in recent years have been of modern style. These considerations are particularly cogent in the relatively immediate vicinity of plaintiffs' property.
We have no doubt that under present-day zoning concepts, and in an appropriate factual setting, a zoning ordinance may properly bring into play aesthetic consideration in regulating the use of property. Lionshead Lake, Inc. v. Township of Wayne, 10 N.J. 165, 176, 177 (1952) (Jacobs, J., concurring opinion); Pierro v. Baxendale, 20 N.J. 17, 29, 30 (1955); Borough of Point Pleasant Beach v. Point Pleasant Pavilion, 3 N.J. Super. 222, 225 (App. Div. 1949); Clary v. Borough of Eatontown, 41 N.J. Super. 47, 67 (App. Div. 1956); 8 McQuillin on Municipal Corporations (1957), §§ 25.29, 25.30, pp. 63, 65; 1 Rathkopf, Law of Zoning and Planning (3d ed. 1956), c. 12, p. 179 et seq. But we consider the present case one in which an appropriate factual setting does not exist in relation to the proposed use of plaintiffs' property and the particular municipal restrictions here sought to be invoked against that use.
*138 Their application would, in our judgment, constitute an arbitrary denial to the plaintiffs of a legitimate use of their property without any colorable vestige of social justification in terms of the general welfare or any other facet of the police power.
The judgment entered by the trial court contains two ordering points: (1) impliedly invalidating both the ordinances aforementioned in their entirety as "arbitrary, discriminatory and having no relationship to the general welfare of the community," and (2) ordering the issuance of building permits to plaintiffs. In view of the conclusions we have arrived at, the judgment will be modified by setting aside the first order and affirming the second.
Judgment modified accordingly.