Marguerite Petz, wife of/and John G. BOURGEOIS, the Louisiana Manufactured Housing Association, Inc., a Louisiana Corporation

v.

**PARISH OF ST. TAMMANY, LOUISIANA.**

Civ. A. No. 84–1364.

United States District Court, E.D. Louisiana.

Feb. 18, 1986.

Thomas F. Daley, Law Offices of Thomas Daley, Metairie, La., for plaintiff.

Steven M. Lozes, Lozes, Cooper & Lozes, New Orleans, La., for defendant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of defendant, Parish of St. Tammany, for summary judgment as to plaintiff's claims regarding violation of federal anti-trust laws and 42 U.S.C. § 1983 and plaintiffs' motion for summary judgment as to their claims under 42 U.S.C. § 1983. Neither party has addressed the plaintiffs' claims regarding federal preemption of the Parish's ordinance.

Upon a review of the memoranda, the depositions and the record in this matter, the Court finds that there exists an issue of material fact as to plaintiffs' claims for relief based on anti-trust violations. Accordingly, summary judgment as to these claims is DENIED.[1] However, the Court finds that there is no genuine issue of material fact as to the plaintiffs' claims for relief under 42 U.S.C. § 1983. For the reasons which follow, plaintiffs' motion for summary judgment as to their § 1983 claim is GRANTED; and the defendant's motion for summary judgment as to the § 1983 claims is DENIED.

Plaintiffs, John and Marguerite Bourgeois, bought a doublewide mobile home[2] from U.S. Mobile Homes in Slidell, Louisiana. This mobile home was towed to the Bourgeois' property on Berry Todd Road near Lacombe, Louisiana, and placed on a cement slab. The slab, although purchased separately, was also purchased from U.S. Mobile Homes. See Deposition of Marguerite Bourgeois, at pps. 7–8. The two halves of the home were joined together at that time. See Defendant's Statement of

---

1. Because neither party has set forth any facts showing or denying the existence of a contract or a conspiracy, as required by 15 U.S.C. § 1, the anti-trust claim is not ripe, at this juncture, for summary judgment.

2. Although the parties disagree over the application of the term "manufactured home" or "mobile home" to the structure in question, we will use the term mobile home to refer to the type of structure in question.

Uncontested Facts No. 2. Subsequent to the installation of the home, St. Tammany Parish denied Mr. and Mrs. Bourgeois a building permit to erect a garage as an attachment to the property in question. See Defendant's Statement of Uncontested Facts No. 6. Additionally, St. Tammany Parish filed suit No. 77687 in the 22nd Judicial District Court of the State of Louisiana in an effort to enforce the zoning ordinance, excluding structures like that erected by the plaintiffs.[3]

The parties agree that the Bourgeois property is zoned "A–2" pursuant to the St. Tammany Parish Land Use Ordinance. See Defendant's Statement of Uncontested Facts No. 3; Plaintiffs' Statement of Uncontested Facts No. 4. St. Tammany Parish classifies "mobile homes" (homes towed to a site on their axles) as "trailers," which are not permitted in an "A–2" zone. However, the Parish does allow modular housing in "A–2" zones. See Plaintiffs' Statement of Uncontested Facts No. 5.

The parties have provided the Court with a copy of the Comprehensive Land Use Regulations, Zoning Ordinance No. 523 of St. Tammany Parish, as revised in November, 1985 (hereinafter referred to as "St. Tammany Zoning Ordinance"). Section 2.401 of the St. Tammany Parish Zoning Ordinance states that an "A–2 suburban district [allows] only the following uses of property ...; single family dwelling, municipal and non-profit recreational use; schools offering general education courses; churches; household agriculture; signs not exceeding twelve square feet in area pertaining to the rental, lease, or sale of the above shall be permitted on any lot; golf courses. All buildings shall be erected with a main floor level *in compliance with the requirements set forth in Flood Ordinance No. 791.* [citation omitted]." St. Tammany Zoning Ordinance, Sections 2.401 and 2.402, provides that all uses not permitted by Section 2.4 are prohibited. St. Tammany Zoning Ordinance Section 2.402.

Part 9 of the St. Tammany Zoning Ordinance is entitled "Definitions." In Section 9.26, "Building" is defined as "a structure which is designated and suitable for the habitation or shelter of human beings or animals, or the shelter or storage of property, or for use in occupation for some purpose of trade or manufacture." St. Tammany Zoning Ordinance, Section 9.26. Section 9.63 defines a single family dwelling as a "building designed for or occupied exclusively by one family." St. Tammany Zoning Ordinance, Section 9.63. A "mobile home" is defined as "any vehicle or similar portable structure mounted or designed for mounting on wheels, used or intended for use for dwelling purposes, including structural additions, except parked and unoccupied camping-type trailers. Any such vehicle or structure shall be deemed to be a mobile home *whether or not the wheels have been removed therefrom* and whether or not resting upon a temporary *or permanent foundation.*" St. Tammany Zoning Ordinance, Section 9.147 [emphasis added]. Similarly, a "trailer" is defined as a "vehicle equipped for use as [a] dwelling and designed to be hauled along a highway. *A trailer is not to be classified as a dwelling in this ordinance.* A vehicle standing on wheels or rigid supports which is used for living or sleeping purposes." St. Tammany Zoning Ordinance, Section 9.222 [emphasis added].

In this case, we are confronted with the overlap of the above ordinance sections. The home in question, because it was moved to the property on wheels to which it was, at that time, attached, falls under the zoning ordinance definition of mobile home and trailer. See St. Tammany Zoning Ordinance, Sections 9.147 and 9.222; Deposition of Allen Cartier at pp. 12–14 (discussing the distinction between a "modular" and a "mobile" home).

The plaintiffs particularly focus their attack on the Ordinance on the distinction

---

**3.** While there is substantial disagreement between the parties as to the exact scope of relief sought in this action, both parties agree that the purpose of the action was to enforce the St. Tammany Parish zoning ordinance in question. *Compare* defendant's Statement of Uncontested Facts No. 7 with Plaintiffs' Response to Defendant's Statement of Uncontested Facts No. 7.

between modular homes, which the Parish considers permissible in an "A–2" zone, and mobile homes, which the Parish does not permit in an "A–2" zone. They also point out that St. Tammany Parish has no building ordinance. Accordingly, as the defendants readily admit, a tar shack and many other buildings of inferior construction to the home in question could be constructed on the instant property. See Deposition of Allen Cartier at page 29.

A local zoning ordinance is a valid exercise of police power unless "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare," *Village of Euclid v. Ambler Realty,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1929). *Cf. Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir.1975); *Folsom Road Civic Assn. v. Parish of St. Tammany,* 407 So.2d 1219 (La.1981). Proper state purposes under the police power may encompass the goals not only of abating undesireable conditions, i.e., nuisances, but also of fostering the ends which a community deems worthy. *Maher v. City of New Orleans, supra,* 516 F.2d at 1060. It is also clear that the police power covers aesthetic as well as safety and health concerns. *See Stone v. City of Maitland,* 446 F.2d 83 (5th Cir.1971); *Mayer, supra; Berman v. Parker,* 348 U.S. 26 at 32–33, 75 S.Ct. 98 at 102, 79 L.Ed. 27. Accordingly, the courts are to give extreme deference to legislative determinations of community needs and solutions, *Maher v. City of New Orleans,* 516 F.2d at 1060, and a plaintiff is to bear a heavy burden to show that an ordinance is invalid. *Id.* Additionally, where the legislative determination is "fairly debatable, the legislative judgment must be allowed to control." *Euclid, supra,* 272 U.S. at 388, 47 S.Ct. at 118; *Stone, supra; Maher, supra.*

Notwithstanding the foregoing, even though a zoning ordinance is presumptively valid, if it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare, it can be invalidated as violative of the fourteenth amendment. *See Town of Chesterfield v. Brooks,* 489 A.2d 600 (N.H.

1985); *Luczynski v. Temple,* 203 N.J.Super. 377, 497 A.2d 211 (N.J.1985); *Tyrone v. Crouch* 129 Mich.App. 388, 341 N.W.2d 218 (1983). The equal protection clause requires that "the classifications drawn in a statute [be] reasonable in light of its purpose." *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *E.B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F.2d 1141, 1153 (5th Cir.1970).

The instant ordinance declares its purposes to be "promoting the health, safety, morals, or general welfare of the Parish...." St. Tammany Zoning Ordinance at p. 1. It also declares that considerations underlying the ordinance are "among other things ... the character of the districts and their peculiar suitability for particular uses, with a view toward conserving the value of buildings and encouraging the most appropriate use of land throughout the Parish". *Id.*

We are confronted here with a very narrow legislative distinction. The zoning ordinance in question distinguishes a "structure mounted or designed for mounting on wheels, used or intended for use for dwelling purposes ... whether or not the wheels have been removed therefrom and whether or not resting upon a temporary or permanent foundation" (*see* St. Tammany Zoning Ordinance, Section 9.147) from any other structure to be used as a dwelling. Site-built and pre-fabricated modular housing transported to a site on a truck or other conveyance other than its own axles or wheels are defined as a dwelling, and are distinguished from a "trailer." St. Tammany Zoning Ordinance, Section 9.222 ("A trailer is not to be classified as a dwelling in this ordinance."). The question, therefore, is whether or not this classification or distinction is reasonable in light of the purpose of the ordinance.

Apparently, the Parish concedes that this ordinance does not serve any health or safety purpose. This is evidenced not only by the failure of St. Tammany Parish Director of the Department of Development,

Mr. Allen Cartier, to articulate a health or safety reason for the ordinance, see Deposition of Allen Cartier at p. 30, but also by the fact that the structure in question would have been acceptable under the ordinance but for the fact that it was transported to the site on its own axles, see Deposition of Allen Cartier at p. 9 (discussing the acceptability of a structure of this constructive floor plan), p. 11 (discussing the acceptability of this structure in terms of appearance) and at p. 13 (discussing the difference between modular housing and mobile homes), as well as the fact that the Parish lacks a building code; see Deposition of Allen Cartier at pp. 28–29.

Accordingly, the only rationale the City actively argues in favor of upholding this ordinance is that it promotes the welfare of Parish residents by preservation of aesthetic and property values.

Although we begin with the proposition that the police power covers aesthetic as well as health and safety concerns, *see Maher v. City of New Orleans* 516 F.2d 1051; *Stone v. City of Maitland,* 446 F.2d 83; *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; *see, also,* Costonis, *Law and Aesthetics,* 80 Mich.L.Rev. 353, 361 (1982) (the citing cases nationwide discussing zoning based on asthetic considerations), a zoning ordinance that does not preserve the values in pursuit of which it was enacted cannot be validated. *See Summerell v. Phillips,* 282 So.2d 450 (La. 1973); *Hankins v. Borrough of Rockleigh,* 55 N.J.Super. 132, 158 A.2d 63 (N.J.1959); *Nectow v. Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928). In this regard, the Parish urges that "when there are mobile homes in a subdivision that are adjacent or within a block of the traditional brick and mortar homes, that the value of the traditional goes down as far as much as $5000.00." Deposition of Allen Cartier at p. 30). However, the Parish concedes that

other than title covenants, there are no Parish regulations of community aesthetics. *See* Deposition of Allen Cartier at p. 31.[4] In addition, other than flood control ordinances, the Parish has no building code. *See* Deposition of Allen Cartier at pp. 28–29. Indeed, the Parish concedes that a landowner "could build a tar paper shack[,] if he wanted to" so long as the structure was site-built. *See* Deposition of Allen Cartier at p. 29. When viewed against the backdrop of this general lack of regulations, the rationale for the Parish's prohibition of the erection of mobile homes in an "A–2" residential zone is substantially undercut. Even recognizing that "the power to classify in the adoption of police laws ... admits of the exercise of a wide scope of discretion," *Lindsley v. National Carbonic Gas Company,* 220 U.S. 61, 78–79, 31 S.Ct. 337, at 340, 55 L.Ed. 369 (1910) the failure of the Parish officials to engage in any other regulative activity aimed at promoting aestietic values makes it difficult to accept the argument that the exclusion of the type of homes here in question is other than arbitrary. This is additionally supported by the fact that not only would a dwelling like that of the plaintiffs be acceptible if it had been carried to the site by a truck rather than on its own axles, but also by the fact that structurally inferior and less aesthetically pleasing structures could be constructed on the land so long as they were site built.

Consequently, when evaluating the degree to which the ordinance in question contributes to the preservation of property values, the general lack of regulation in this area and the failure of the Parish to regulate in other areas which might be more fruitful, *i.e.,* a building code or other aesthetic regulations, makes it difficult to find that this zoning ordinance is "reasonable" in light of the purposes urged by the Parish. *Cf. McLaughlin v. Florida,* 379

---

**4.** The Deposition read, in part:

"Q: Are there any regulations on asthetics in St. Tammany Parish as to structures?

A: Yes, there are in certain subdivisions but not parishwide as well as police jury ordinances, no.

Q: So you are referring to title covenants?

A: Yes, other than that, there is not.

Q: So the Parish does not regulate aesthetics?

A: No."

U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (discussing the requirements of the Equal Protection Clause).

Having reviewed the ordinance in question, the application of the ordinance to the facts of this case and the applicable law, we are left with the firm conviction that the ordinance is ill-conceived, arbitrary and unreasonable. As the Michigan Supreme Court has noted: "[t]he mobile home today can compare favorably with site-built housing in size, safety and attractiveness. To be sure, mobile homes inferior in many respects to site-built homes continue to be manufactured. But the assumption that all mobile homes are different from all site-built homes with respect to criteria recognizable under the police power can no longer be accepted." *Robinson Township v. Knoll*, 410 Mich. 293, 302 N.W.2d 146 at 150–51, (Mich.1981). The ordinance in question here does not address itself to the characteristics of the mobile home as it exists on the land, but as to its characteristics at the time of delivery. Accordingly, we find, in conformity with the findings of the Michigan Supreme Court, that the characteristics specified in the ordinance do not constitute a basis for the disparate treatment of "mobile homes" as applied to the structures in question. *See Robinson Township v. Knoll*, 302 N.W.2d at 152.

In light of the foregoing, we find that the ordinance, insofar as it defines structures like those of the plaintiff as trailers and, as a consequence thereof, does not allow such structures to be classified as dwellings, is not reasonably related to a police power purpose. Consequently, the plaintiffs' motion for summary judgment is granted insofar as it seeks to invalidate the ordinance provisions that allow multi-sectional manufactured housing to be classified as modular housing and, accordingly, capable of serving as a dwelling, and yet provide that "mobile homes" are not classifiable as a dwelling because the structure is mobile in its assembled form, the complete package including a chassis.

The Court finding that there is no just reason for delay, the Clerk of Court is directed to enter judgment pursuant to Rule 54(b) in favor of plaintiffs as to their 42 U.S.C., § 1983 claim. The plaintiffs are directed to meet with the defendant and to submit a joint proposed form of judgment to the Clerk on or before February 25, 1986.