# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CC-01466-SCT

*WILLIAM J. HEROMAN, JANET L. HEROMAN,*
*ERIC LYNCH, NICHOLAS AUGUSTUS, IV,*
*TIMOTHY KOERNER, ANN KOERNER, HILDA*
*WILLIAMS AND BARBARA SCOTT*

*v.*

*MAYOR BILLY McDONALD AND BOARD OF*
*ALDERMEN OF THE CITY OF PASS CHRISTIAN,*
*MISSISSIPPI, AND PHYLLIS HUGHES AND RANDY*
*TUGGLE, INTERVENORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/29/2003 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | FLOYD J. LOGAN |
| ATTORNEYS FOR APPELLEES: | PRO SE & |
| | FRANK R. McCREARY, III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/19/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND GRAVES, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This zoning case is before the Court on appeal by bill of exceptions from the judgment of the Circuit

Court of Harrison County, Mississippi, affirming the decision of the City of Pass Christian Mayor and

Board of Aldermen (collectively "City Board").  The circuit court held  that the property located at 401

East Scenic Drive, Pass Christian, Mississippi, and the building situated thereon, commonly known as the

"Palace in the Pass, "is a lawful continuation of nonconforming use."  Finding no reversible error, we affirm.

**FACTS**

¶2.    Randy Tuggle and Phyllis Hughes are the owners of the property at 401 East Scenic Drive, Pass Christian, Mississippi, commonly known as the "Palace in the Pass."  On May 1, 2000, the owners purchased the property from the Cecil R. Ruddock Post 5931, Veterans of the Foreign Wars of the United States (hereinafter "V.F.W.").  Objectors, William J. Heroman, et al, are the owners of real property situated, adjoining, and/or surrounding the Pass property.  The property is located within an area zoned as a residential R-0 (Historic District) by the Zoning Ordinance of the City of Pass Christian.  Over the past one hundred years, the building located at 401 East Scenic has been used for various purposes, including a general store, hardware store, and a V.F.W. post.  The V.F.W. bought the building in 1958 in order to conduct its meetings and operate a venue which would enable it to raise funds for various charitable causes.  The events held on the premises during the V.F.W.'s ownership included wedding receptions, dances, bingo nights, steak dinner nights, and other community activities.  The V.F.W. post also included a lounge which served beer and was open to the citizens of Pass Christian. Additionally, the V.F.W. rented the space on the second floor of the building as a residence.  The V.F.W. used the building in substantially the same manner from 1958 to 2000.  The former post commander testified that, although the frequency  of events tended to be more densely concentrated around the holidays and during June for weddings, the V.F.W. rented the building ten  to twelve times per year on average.

¶3.    The City of Pass Christian passed its zoning ordinances in 1972.  At the time the ordinances were enacted, a list of nonconforming uses was compiled, including the V.F.W. post.   In 1997, the nonconforming use status was confirmed by the zoning board in its minutes.  On July 10, 2000, Tuggle and Hughes applied to the Pass Christian Code Office for a building permit.  The permit application was for structural repair to the building.  When Hughes went to the Code Office to apply for the permit, the regular

code officer was out sick. As a result of the regular code officer's absence, the newly hired assistant officer aided Hughes in the completion of all necessary forms. At that time, Hughes informed the assistant officer that the upstairs of the subject property would be used for residential purposes and the downstairs would be used as a reception hall. The permit application was completed on July 10, 2000, with the assistant code officer filling in the occupancy as "Single-Family Dwelling." In early September, the City Attorney sent an opinion letter to the Board and code enforcement officer advising that the owners had a right to continue the nonconforming uses as a distinct property right citing positive case law from this Court and Section 402(G) of the Zoning Ordinance No. 351 which governs the loss of non-conforming status. In late October 2000, the City Clerk issued a business privilege license to the owners for the nonconforming use of holding "receptions/parties."

¶4. Heroman and other adjoining or surrounding property owners near the 401 East Scenic property applied to the zoning board for administrative review and interpretation of the zoning ordinance or map of the city concerning the owners use of the property. After conducting a public hearing on the issue, the zoning board held that the Palace in the Pass was not a continuation of a legal nonconforming use and was therefore in violation of the zoning ordinance. An appeal was filed with the Mayor and Board requesting relief from the decision of the zoning board. After some procedural wrangling in the Circuit Court of Harrison County over whether the city board lacked jurisdiction, the appeal was sent back to the Mayor and Board for consideration. A public hearing was held where many lifelong residents in this close-knit community testified as to the events and activities put on by the V.F.W. over its 42 years of occupancy and ownership of the property. Parties in opposition to and in support of the operation of the Palace in the Pass were given the opportunity to voice their concerns during the meeting. The Board of Aldermen and mayor subsequently reversed the decision of the zoning board and held that the Palace in the Pass was a

3

legal continuation of a nonconforming use.    Heroman and other objectors then appealed to the circuit court which affirmed.

## ANALYSIS

¶5.    The classification of property for zoning purposes is a legislative matter rather than a judicial matter. *Faircloth v. Lyles*, 592 So.2d 941, 943 (Miss. 1991); *W.L. Holcomb, Inc. v. City of Clarksdale*, 217 Miss. 892, 900, 65 So.2d 281, 283 (1953). Zoning decisions rendered by a government carry a presumption of validity, casting the burden of proof upon the individual or other entity asserting invalidity. *Faircloth*, 592 So.2d at 943; *Ridgewood Land Co. v. Moore*, 222 So.2d 378, 379 (Miss. 1969). In examining a zoning order issued by a city council, the circuit court sits as an appellate court with a restricted scope of judicial review. *Red Roof Inn, Inc. v. City of Ridgeland*, 797 So.2d 898, 899 (Miss. 2001); *Ridgewood Land Co.*, 222 So.2d at 379. This Court has long held that the standard of review in zoning cases is whether the action of the board or commission was arbitrary or capricious or whether it was supported by substantial evidence. *Perez v. Garden Isle Cmty. Ass'n*, 2003 WL 22510504, * 2 ¶ 5 (Miss. 2003); *In re Carpenter*, 699 So.2d 928, 932 (Miss. 1997); *Broadacres, Inc. v. City of Hattiesburg*, 489 So.2d 501, 503 (Miss. 1986). The Court further holds that the circuit court acts as an appellate court in reviewing zoning cases and not as the trier of fact. *Perez*, 2003 WL 22510504, *2 at ¶ 5; *Bd. of Aldermen v. Conerly*, 509 So.2d 877, 885 (Miss. 1987). In fact, neither the circuit court nor the Supreme Court has the power to tamper with municipal zoning unless the zoning decision is shown to be arbitrary, capricious, discriminatory, illegal, or without substantial evidentiary basis. *In re Carpenter*, 699 So.2d at 932; *City of Jackson v. Aldridge*, 487 So.2d 1345, 1347 (Miss. 1986). More plainly stated, the order of municipal governing body may not be set aside if its validity is

4

fairly debatable. *Perez*, 2003 WL 22510504, * 2 ¶ 6; *Saunders v. City of Jackson*, 511 So.2d 902, 906 (Miss. 1987).

¶6. The considerable decision-making power attributable to municipal authorities in zoning matters is not unfettered. In balancing the respective rights and duties of property owners, zoning boards, and community intervenors in continuation of nonconforming use disputes, the Court must be reminded that the right to continue a nonconforming use is not a personal right but one that runs with the land. *Faircloth*, 592 So.2d at 945. It follows, as night follows day, that this right may not be terminated or destroyed by change of ownership of property alone. *Id.*; *Barrett v. Hinds County*, 545 So.2d 734, 737 (Miss. 1989). *See also,* Kenneth H. Young, Anderson's, American Law of Zoning, § 6.40 at 610 (4th ed. 1996).

¶7. The objectors first argue insufficient notice, asserting the Board should have followed Section 1005.2 of the city zoning ordinances which requires notice to be mailed not less than fifteen (15) prior to hearing, to the owner(s) of all properties within a radius of three-hundred (300) feet of the external boundaries of the property described in the application for special exception. On the other hand, Miss. Code Ann. § 17-1-17 (Rev. 2003), requires only that notice of changes or amendments be given within fifteen (15) days via publication in an official paper or a paper of general circulation. This issue was specifically addressed by the Mayor and Board. Counsel for the objectors argued that additional property owners who could have been affected by the hearing may not have received notice or even knowledge of the proceedings by publication. The objectors' argument that the notice provisions of Section 1005.2 of the city zoning ordinances should apply is without merit. This section only applies where the action taken by the zoning board concerns a special exception permit. Continuation of a nonconforming use is a right

5

that is one of the many rights guaranteed to property owners in Mississippi by the common law. It flows with the land and does not require application for special exception unless the nonconforming was lost pursuant to Section 402(G) which would then require the owners to obtain a special exception if they wished to continue in their commercial endeavor. The zoning board and the city board decided the issue of whether there was a legal continuing nonconforming use, not whether a special exception should be granted. These issues are distinct, unrelated to one another, and the objectors' argument is fatally flawed on this point.

¶8. The objectors further argue that the owners lost or abandoned the benefits of their nonconforming use status by obtaining a certificate of occupancy of the building as a single-family dwelling. Section 402(G) of the Zoning Ordinances No. 351 governs the loss of nonconforming status and provides forfeiture of nonconforming status under the following circumstances: (1) land legally joined under common ownership with adjoining land so that the entirety is conforming; (2) use of land ceases for any reason for a period of one year; (3) structure is made to conform; (4) use of a structure discontinued or abandoned for twelve consecutive months; and/or the (5) the nonconforming use is changed to a conforming use no matter how short the period of time. This argument also fails because testimony from the permanent zoning officer, Owner P.J. Hughes, and former V.F.W. Post Master Scarborough showed that not only that there had been a mistake by an inexperienced assistant code officer, but that the use of the second floor as a rental property for residence had been part of or included in the nonconforming use of the property along with the weddings, receptions, parties, and other activities held on the first floor. It was established that there had been a change in the business conducted from nonprofit under V.F.W. ownership to commercial under Hughes's and Tuggle's ownership. However, additional testimony from an adjoining property owner supporting the operation of the Palace, aldermen, and a local judge showed that the new owners of the

6

Palace in the Pass hosted events for charity and community groups free of charge on a regular basis. Ample substantial evidence supported the Board's decision that overall character and nature of the activities taking place at the Palace remained unchanged with new ownership such that the owners had a legal continuing nonconforming use of the property. Unfortunately, this testimony diverges slightly from the correctly framed issue of whether the nonconforming use was lost under Section 402(G). The question is not whether the business is nonprofit or commercial. The question is whether the owners lost their right to continue the nonconforming use under prongs four or five of the aforementioned section. The objectors do not argue discontinuation or abandonment for more than one year. They argue only that the commericial nature of the Palace in the Pass under the new ownership fatally changes the nonconforming use into a conforming use. Although this is a novel and intelligent argument, it is not supported by the governing zoning regulations which specifically provide for circumstances whereby nonconforming status is lost.

## CONCLUSION

¶9.    In its Findings of Fact and Conclusions of Law the Board noted the similarities in the Palace's current activities or uses with the activities or use employed by the V.F.W. Additionally, it noted that fees were always an integral part of the V.F.W.'s operation of the property. The Board did find that the Palace had lost its right to continue the operation of a bar on the premises, as the V.F.W. had operated and opened to the citizens of Pass Christian, due to its failure to continue the nonconforming use. The Board further stated that the certificate of occupancy as a single-family dwelling was obtained for the purposes of a building permit for construction work to be done on the second floor residence which was not expanded but merely renovated. The Board concluded that no unlawful expansion or enlargement of the nonconforming use occurred rendering it forfeited. The Board's decision and the circuit court's decision to uphold the Board were supported by substantial evidence, and neither decision was arbitrary, capricious,

7

confiscatory, illegal, or discriminatory. Thus, we affirm the judgment of the Circuit Court of Harrison County upholding the decision of the Mayor and Board of Aldermen of the City of Pass Christian.

¶10. **AFFIRMED.**

**WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**