946 F.Supp. 1539 (1996)
COLORADO MANUFACTURED HOUSING ASSOCIATION; Cedarcrest Homes, Inc., a Colorado corporation; John T. Ridings; Bob's Quality Housing, Inc., a Colorado corporation; Iris Copeland, D & E Enterprises, Inc. d/b/a Aspen Homes; Yolanda Blair; High Country Homes, Inc., a New Mexico corporation; Bookcliff, Inc., a Colorado corporation; Westerra Homes Corporation, a Colorado corporation; H Construction, Inc., a Colorado corporation; Tom Paxton and Charles Schovanec; Charles and Mary Snider; Leonard and Joanne Leapoldt; Front Range Housing, Inc., a Colorado corporation; A-Value, Inc., a Colorado corporation; Golden Villa Homes, Inc., a Colorado corporation; and All American Homes, Inc., a Colorado corporation, Plaintiffs,
v.
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PUEBLO, COLORADO; Board of County Commissioners of the County of Garfield, Colorado; Town of Meeker, Colorado, Town of Silt, Colorado; City of Salida, Colorado; City of Cortez, Colorado; City of Delta, Colorado; City of Fountain, Colorado; Board of County Commissioners of the County of Weld, Colorado; Board of County Commissioners of the County of Grand, Colorado; Board of County Commissioners of the County of Clear Creek, Colorado; City of Sterling; City of Holyoke; City of Gunnison; City of Fruita; Town of Palmer Lake; Town of Hudson; Town of Ault; Town of Platteville; Town of Grand Lake; and Town of Frederick, Defendants.
Civil Action No. 94-K-421.
United States District Court, D. Colorado.
November 21, 1996.
*1540 *1541 *1542 Thomas B. Frank, Hall B. Warren, Terrence P. Murray, Frank & Finger, P.C., Evergreen, CO, for Plaintiffs.
Steven J. Dawes, Heidi Anne Harpowiski, Senter, Goldfarb & Rico, L.L.C., Denver, CO, Gary J. Raso, Kelly & Potter, P.C., Pueblo, CO, Lee David Morrison, County Attorney's Office, Weld County, Greeley, CO, Peter W. Burg, Burg & Eldredge, P.C., Denver, CO, Don K. Deford, County Attorney's Office, Garfield County, Glenwood Springs, CO, Terry A. Hart, County Attorney's Office, Pueblo, CO, Richard Elberts Samson, Kristin Nordeck Brown, Samson & Brown, Longmont, CO, Bradley Unkeless, Unkeless & Bisset, Denver, CO, for Defendants.

MEMORANDUM OPINION AND ORDER
KANE, Senior District Judge.

INTRODUCTION.
Plaintiffs are dealers of manufactured homes, the association to which these dealers belong (Colorado Manufactured Housing Association  CMHA), a builder who installs manufactured homes, and several individuals who wanted to buy manufactured homes and install them in many of the defendant cities, towns, and counties in Colorado until they were denied building permits. According to plaintiffs, defendants' zoning ordinances place illegal restrictions upon the installation of manufactured homes. Plaintiffs seek to have these ordinances declared invalid.
The Third Amended Complaint has twenty-eight claims for relief. Plaintiffs seek declaratory and injunctive relief in Claims 20-21 and 25-28. The other claims allege constitutional deprivations under 42 U.S.C. § 1983 for individual instances of lost sales of manufactured homes.
There are twelve outstanding motions:
(1) Fountain's Motion for Summary Judgment;
*1543 (2) Salida's Motion for Summary Judgment;
(3) Silt's Motion for Summary Judgment;
(4) Plaintiffs' Motion for Summary Judgment against Silt, Salida, Fountain, and Frederick;
(5) Salida's and Silt's Motion to Strike Testimony;
(6) Salida's and Silt's Motion for Leave to File a Reply in Support of their Motion to Strike Testimony;
(7) Fountain's Motion to Dismiss Plaintiffs' Claim that Ordinance is Preempted by State Law;
(8) Fountain's Motion for Leave to File Reply to Its Motion to Dismiss;
(9) Gunnison's Objection to Magistrate's Ruling on Gunnison's Motion to Enforce Settlement;
(10) Garfield's Motion to Enforce Settlement;
(11) Sterling's Motion for Summary Judgment;
(12) Plaintiff's Motion for Summary Judgment against Garfield and Sterling.
This memorandum considers the following issues:
(A) Whether the individual plaintiffs have standing to sue in this case;
(B) Whether CMHA has associational standing;
(C) Whether federal law preempts the defendants' ordinances;
(D) Whether Fountain's zoning ordinances are preempted under state law;
(E) Whether Fountain's and Frederick's ordinances violate the Fourteenth Amendment; and
(F) Whether the ordinances violate the Commerce Clause.

A. INDIVIDUAL STANDING

The first issue presented by the defendants' motions for summary judgment[1] is whether the individual plaintiffs have standing.
The Tenth Circuit recently prescribed how courts should deal with standing in the context of summary judgment motions:
Plaintiffs bear the burden of proving standing with the manner and degree of evidence required at the particular stage of the litigation. In response to a summary judgment motion, the nonmovant must present specific facts by affidavit or other evidence, which will be taken as true for purposes of the motion. Summary judgment is then proper if there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law.
Gilbert v. Shalala, 45 F.3d 1391, 1394 (10th Cir.) (citations omitted), cert. denied, ___ U.S. ___, 116 S.Ct. 49, 133 L.Ed.2d 14 (1995).
The Supreme Court also dealt with the issue of standing on a motion for summary judgment in Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). There, the Court decided that, on motion for summary judgment challenging standing, all of the material allegations in the complaint as well as additional information uncovered by discovery, should be accepted as true and construed in plaintiffs' favor. Gladstone, 441 U.S. at 109 n. 22, 99 S.Ct. at 1613 n. 22.
Although summary judgment motions can be used to challenge standing, the usual burden of proof does not apply. Normally, it is the defendant's burden, as the moving party, to prove there are no disputed issues of fact. The plaintiff always has the burden of proving standing, however, no matter how or when the issue is raised. Thus, the burden is on the plaintiff, on a motion for summary judgment, to demonstrate that standing exists. See Glover River Org. v. U.S. Dept. of Interior, 675 F.2d 251, 254 n. 3 (10th Cir.1982) (when a standing issue has gone beyond the pleadings to summary judgment, "the plaintiff must do more than plead standing; *1544 he must prove it"); Lujan v. National Wildlife Federation, 497 U.S. 871, 884-85, 110 S.Ct. 3177, 3186-87, 111 L.Ed.2d 695 (1990) (Rule 56 does not place on the defendant seeking summary judgment the burden of negating the elements necessary to establish standing). If there are any genuinely disputed facts regarding standing, summary judgment is, of course, inappropriate. But the standing issue must still be dealt with "either through a pretrial evidentiary proceeding or at trial itself." Munoz-Mendoza v. Pierce, 711 F.2d 421, 425-26 (1st Cir.1983).

1. Defendant City of Fountain's Motion for Summary Judgment.

Defendant City of Fountain, Colorado has moved for summary judgment, claiming plaintiffs Wes Terra, a manufactured homes dealer, and H Construction, a builder who installs manufactured homes, lack standing to sue. The complaint alleges in November 1993 H Construction negotiated with Wes Terra to buy seven manufactured homes which were to be installed on property situated within the City of Fountain. The eleventh and twelfth claims in the Third Amended Complaint state H Construction and Wes Terra, respectively, suffered constitutional deprivations under the Commerce Clause, United States Constitution, art. I, § 8, cl. 3, and economic loss when the sale fell through as a result of defendant Fountain's refusal to allow the installation of the manufactured homes on the property in question. Plaintiffs' twenty-second and twenty-third claims allege the due process rights of Wes Terra and H Construction, respectively, were violated by Fountain's per se exclusion of manufactured housing. Plaintiffs seek declaratory and injunctive relief against the City of Fountain in claims 25 through 28.
At its simplest, this part of the case is about the loss of the sale of seven manufactured homes. Construing the facts alleged in the complaint, affidavits, and deposition testimony in favor of the plaintiffs, the proposed deal between Wes Terra and H Construction was specific enough, particularly at this stage in the proceedings, that the constitutional deprivations and economic injury purportedly caused by the loss of the deal are sufficient to confer standing.
Although the parties dispute some of the facts surrounding this part of the case, there are enough core facts that are not in dispute which support this finding. The proposed project in this case involved the development of land within the City of Fountain by plaintiff H Construction, including the installation of manufactured homes on this land. H Construction entered into negotiations with Wes Terra, to buy seven homes to be installed on the property. Before consummating this deal with Wes Terra, Ted Hanson, President of H Construction, met with Dr. Roger Bumgardner, who had an ownership interest in the property in question, regarding development of the land. Bumgardner agreed to allow Hanson and his construction company to develop the property. Hanson also obtained preliminary financing approval for the project from a bank. When Hanson approached the city, however, he was told by David Smedsrud, the Deputy City Manager and Planning Director, that he would not be permitted to install any manufactured homes on the property because the relevant zoning ordinances prohibited manufactured homes. Based on this representation, H Construction refused to buy any homes from Wes Terra.
The legal standards applicable to issues of standing were recently set forth by the Tenth Circuit:
Under Article III of the Constitution, jurisdiction of federal courts is limited to cases and controversies. U.S. Const. art. III, § 2. Standing is an essential part of the case-or-controversy requirement and involves three elements. Lujan v. Defenders of Wildlife, [504 U.S. 555, 559] 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered an invasion of a legally-protected interest that is "concrete and particularized," and "actual or imminent," not "conjectural or hypothetical." Id. (internal quotations omitted) (citations omitted). Second, there must be a causal connection between the injury and the complained of conduct; that is, the injury must be "`fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of *1545 some third party not before the court.'" Lujan, 504 U.S. at 560, 112 S.Ct. at 2136 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, it must be likely, not merely speculative, that the injury will be "`redressed by a favorable decision.'" Lujan, 504 U.S. at 561, 112 S.Ct. at 2136 (quoting Simon, 426 U.S. at 38, 96 S.Ct. at 1924).
Shalala, 45 F.3d at 1393-94.
Once these constitutional requirements are met, the court must decide whether certain prudential factors have been established:
(1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating "generalized grievances" most appropriately addressed by one of the other branches of government; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.
Mount Evans Co. v. Madigan, 14 F.3d 1444, 1450-51 (10th Cir.1994) (citations omitted).
The facts, when construed in favor of the plaintiffs, support a finding that they have standing in this case. Their alleged injuries  constitutional deprivations and economic injury caused by the loss of the sale  are direct and concrete. These purported injuries were also proximately caused by the City of Fountain's refusal to permit installation of the manufactured homes. Assuming the zoning ordinances are found to be invalid, such injuries could be redressed. Further, this is not a case where prudential factors would dictate a lack of jurisdiction. There has been actual, albeit alleged, harm to the plaintiffs; they are not asserting generalized grievances more appropriately brought elsewhere; and their complaint arguably falls within the "zone of interests" protected by the statutes and constitutional guarantees allegedly violated in this case.
Defendants Salida and Silt have made similar claims of lack of standing in their motions for summary judgment.

2. Defendant City of Salida's Motion for Summary Judgment.

The Third Amended Complaint alleges in the seventh claim for relief that Plaintiff Aspen Homes suffered constitutional deprivations and economic loss when the City of Salida refused to allow the installation of a manufactured home Aspen had contracted to sell to Samuel and Kathleen Trujillo. Claims 20 and 21 seek declaratory and injunctive relief pertaining to Salida's zoning ordinances as they relate to manufactured housing.
It is undisputed that the Trujillos entered into a contract to buy a manufactured home from Aspen Homes to be installed on property in Salida. It is also not disputed that Salida officials refused to issue a building permit for the installation of this home. According to William Eberhart, President of Aspen, he arranged for financing of the home for the Trujillos and then put together the paperwork necessary for a building permit. Eberhart testified that when he presented these papers on behalf of the Trujillos to an employee of the city in order to obtain a building permit, they were refused and Eberhart was told that a manufactured home could not be installed on the proposed site. When the Trujillos learned of the permit denial, they terminated the contract to buy a manufactured home from Plaintiff Aspen Homes.[2]
These facts support a finding that Plaintiff Aspen Homes has suffered an injury-in-fact. The actual injury requirement is clearly satisfied by the economic losses a business suffers due to the application of a government rule. See Mountain States Legal Foundation v. Costle, 630 F.2d 754, 764-65 (10th Cir.1980), cert. denied, 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981). The alleged constitutional deprivations are also direct and concrete. These purported injuries are alleged to have been directly *1546 caused by the city's refusal to accept the paperwork for the building permit and the defendant City of Salida has offered nothing in the way of evidence to refute this causal link. Further, as discussed above, assuming the zoning ordinances are found to be invalid, these alleged injuries could be redressed. The constitutional requirements for standing are met and none of the prudential considerations apply. Plaintiff Aspen Homes has met the requirements for standing in this case.

3. Defendant Town of Silt's Motion for Summary Judgment.

The Town of Silt has also moved for summary judgment, arguing that Plaintiffs Iris Copeland and Bob's Quality Housing, Inc. (Quality) lack standing. The facts of the relevant claims are very similar to those discussed above. The Third Amended Complaint alleges in the fifth and sixth claims for relief that Copeland and Quality suffered constitutional deprivations and economic losses when the Town of Silt refused to allow Copeland to install a manufactured home she'd ordered from Quality on land she owned in Silt. Copeland and Quality also seek declaratory and injunctive relief in Claims 20 and 21.
The facts alleged in the complaint, the affidavits, and deposition testimony, construed in favor of the plaintiffs, are as follows: In November 1993, Copeland went to Bob's Quality Housing and signed a contract to purchase a HUD-manufactured home. Copeland intended to have this house installed on land she owned within the Town of Silt, Colorado. While the house was on order, Copeland contacted a Silt employee to inquire what paperwork was needed for a building permit. Copeland was told by this city employee that she could not install a HUD-manufactured home on that property because the zoning ordinances prohibited such homes. Copeland then canceled the contract with Quality.
There is some indication that Copeland later ordered a different, more expensive house from Quality. (Pls.' Resp. Def. Silt's Mot. For Summ. J., Ex., Copeland Dep. at 22.) Copeland's $500 down payment on the HUD-manufactured house was applied to the second house. Id. The defendant, in its reply to the plaintiffs' response, claims the plaintiffs suffered no injury and, therefore, lack standing. Specifically, Defendant Silt makes this assertion at page 5 of its reply:
Because it is undisputed that Ms. Copeland bought a home from Bob's, and that Ms. Copeland profited approximately $20,000 as a result of these transactions (see Defendant's Response to Plaintiff's Motion for Summary Judgment), a declaration by this court that Silt's Zoning Ordinance is unconstitutional will not redress Plaintiffs' injury stated in their Complaint, and they therefore have no standing to have such claims heard by this Court.
The facts that might support this assertion do not appear in the record. Without any facts to support this assertion, I must deny Defendant Silt's Motion for Summary Judgment on the standing issue. The plaintiffs have met their burden sufficiently at this point by providing deposition testimony supporting their claims of injury-in-fact. Whether these facts can be disproved by the defendant remains to be seen.

4. Defendant City of Sterling's Motion for Summary Judgment.

The City of Sterling has also moved for summary judgment on the issue of standing. Unlike the other motions on this issue discussed above, this motion has merit.
Sterling argues the plaintiffs lack standing to pursue any claims against it primarily because they have not alleged, let alone demonstrated, sufficient facts to prove standing. In this case, there are only very general allegations in the Third Amended Complaint concerning Sterling. Sterling is included only in the claims seeking injunctive and declaratory relief. There are no specific facts set forth anywhere in the complaint regarding Sterling. Omissions of specific facts are very apparent when compared with the facts alleged in the complaint surrounding the purported loss of sales of manufactured homes in Fountain, Salida, and Silt, as discussed above.
In response to Sterling's motion for summary judgment contesting standing, the *1547 plaintiffs offer the affidavit of Mr. Richard Kelly, the Sales Manager for Plaintiff Front Range Housing, Inc. which states, in relevant part, as follows:
Front Range has had numerous potential customers express interest in purchasing a HUD-Code manufactured home to be installed in the City of Sterling who, when they learned of the restrictions against the placement of such homes contained in the Sterling Zoning Ordinance, ultimately did not purchase the home. The most recent such customer contact occurred in 6-1-95 [sic].
(Pls.' Supp. Resp. Def. City of Sterling's Mot. Summ. J., Ex., Kelly Aff. at 1.)
As discussed above, on motion for summary judgment, the plaintiff must affirmatively prove that standing exists. Glover River, supra, 675 F.2d at 254 n. 3. In proving he has standing, "a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention." Warth, 422 U.S. at 508, 95 S.Ct. at 2210 (emphasis in original).
In the instant case, the plaintiffs have not met this burden. There are no specific facts alleged in the complaint regarding Sterling. Even if the assertions in Richard Kelly's affidavit were accepted as true and construed in the plaintiffs' favor, they are not specific or concrete. In their claims against Fountain, Salida, and Silt, the plaintiffs were able to name a specific buyer and to list details of an actual sale that was lost due to the application of the challenged ordinances. Vague references to unnamed and unknown potential buyers without specific detailed facts leads to speculation, not a concrete controversy. Since, "standing cannot be based on... speculative conjectures which are neither alleged nor proved," Juidice v. Vail, 430 U.S. 327, 333 n. 9, 97 S.Ct. 1211, 1216 n. 9, 51 L.Ed.2d 376 (1977), Sterling's motion for summary judgment on this issue of standing is granted.
Similarly, standing is lacking with respect to defendants Grand County, Clear Creek County, the City of Holyoke, the City of Fruita, the Town of Palmer Lake, the Town of Platteville, and the Town of Grand Lake. As with Sterling, there are no facts alleged in the Third Amended Complaint regarding these defendants. They have not moved for dismissal or summary judgment on the issue of standing but I may do so ex mero motu.
The "[p]laintiff's ability to demonstrate his or her standing in a particular case is a threshold requirement which empowers a federal court to adjudicate the dispute." Hinkson v. Pfleiderer, 729 F.2d 697, 700 (10th Cir.1984). Jurisdictional issues, such as standing, "are of primary consideration and can be raised at any time by courts on their own motion." Citizens Concerned for Separation of Church and State v. City & County of Denver, 628 F.2d 1289, 1297 (10th Cir.1980) (citations omitted), cert. denied, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); see also Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.1979) (even though not raised by the parties, lack of jurisdiction may be considered by the court at any stage of the proceedings).
There are no facts demonstrating any injury-in-fact on the part of the plaintiffs with respect to these defendants. Presumably, the plaintiffs do not like the zoning ordinances in these counties and towns. Yet, there are no allegations that any plaintiff actually lost a sale in any of these counties and towns due to application of the relevant zoning ordinance. Given a complete lack of facts supporting claims against these defendants they are dismissed, sua sponte, without prejudice, for lack of standing.

B. ASSOCIATIONAL STANDING.

The second issue asserted by defendants Fountain, Salida, and Silt in their motions for summary judgment concerns the standing of Plaintiff Colorado Manufactured Housing Association (CMHA). The defendants claim CMHA lacks standing because: (1) an association cannot recover damages on behalf of its members and (2) CMHA has not alleged facts sufficient to make out a case or controversy had the members themselves brought suit.
*1548 In order to have standing, an association must meet the following requirements:
(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.
Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); see also Colorado Taxpayers Union, Inc. v. Romer, 963 F.2d 1394, 1397-98 (10th Cir.1992), cert. denied, 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993) (adopting this three-part test).
The defendants' first argument that CMHA lacks standing to assert claims for damages has merit because the law is clear that where individual participation by the members is required to prove damages, which would be the case here, an association cannot pursue damage claims on behalf of its members. See Warth, supra, 422 U.S. at 515-16, 95 S.Ct. at 2213-14 (1975). CMHA has acknowledged this by responding to the defendants' argument with an offer to withdraw any damage claims. Accordingly, references to recovery of money damages in paragraph 66 of the Third Amended Complaint are stricken.
The defendants' second argument, that CMHA has no standing because its members have no standing to sue in their own right, is moot in light of the discussion above. Plaintiffs Wes Terra, Aspen Homes, and Bob's Quality Housing, Inc. are all members of CMHA[3] and since they have standing to sue, CMHA has associational standing.

C. FEDERAL PREEMPTION OF LOCAL ZONING ORDINANCES.

Plaintiffs and some of the defendants have filed cross-motions for summary judgment[4] regarding the issue of whether federal law preempts the defendants' zoning ordinances. The plaintiffs contend the defendants' zoning ordinances impose construction and safety standards on manufactured housing in their jurisdictions that are not identical with those required by federal law and, thus, the ordinances are invalid under the preemption doctrine. The defendants, on the other hand, maintain their ordinances deal only with land use and not with the manner in which manufactured homes are constructed. They claim the preemption doctrine is not applicable because the purpose of the ordinances is to regulate where manufactured homes may be placed to maintain appearances in certain neighborhoods and to protect the tax base; not to impose construction and safety standards on manufactured homes which differ from those required by federal law.

1. The Preemption Doctrine

Preemption is the power of the federal government to supplant state law with respect to matters the federal government has the power to regulate under the Constitution.[5] The preemption doctrine is most often thought to derive from the Supremacy Clause which provides that the laws of the United States "shall be the supreme Law of the Land; any Thing in the Constitution or *1549 Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is well-settled under the preemption doctrine that federal law supersedes any conflicting state law. See Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128-29, 68 L.Ed.2d 576 (1981).
The power of the federal government to displace state law is very potent. It divests the states of their ability to regulate in areas within their usual domain. Displacing state law in traditional spheres of state authority (like zoning) by application of the preemption doctrine is not done cavalierly by the courts. Concern over this enormous federal power has led courts to apply a canon of interpretation that amounts to a presumption against preemption. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("[W]e must construe these provisions in light of the presumption against the preemption of state police power regulations"); Maryland v. Louisiana, supra, 451 U.S. at 746, 101 S.Ct. at 2128 ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law"). Thus, it is well-settled that the states' historic police powers should not be superseded by federal laws unless that is "the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
Preemption analysis begins with a determination of Congressional intent which can either be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Where, as in the present case, Congress provides an explicit preemption provision in the relevant statute, there is no need to consider whether preemption may be implied. See Cipollone, 505 U.S. at 517-18, 112 S.Ct. at 2618; Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443 (10th Cir.), cert. denied, 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). When interpreting preemption clauses, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Because of the presumption against preemption, express preemption provisions are read narrowly. Cipollone, 505 U.S. at 517-18, 112 S.Ct. at 2618.

2. The Federal Statute

The federal law at issue in this case is the National Manufactured Housing Construction and Safety Standards Act of 1974 (NMHCSSA), 42 U.S.C. §§ 5401-5426. Congress passed this legislation in order to "reduce the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from manufactured home accidents and to improve the quality and durability of manufactured homes." 42 U.S.C. § 5401. To accomplish these objectives, Congress ordered the Secretary of Housing and Urban Development (HUD) to establish federal construction and safety standards for manufactured homes. 42 U.S.C. § 5403(a). These regulations, codified at 24 C.F.R. §§ 3280-3282 (1994), provide standards with which manufacturers must comply in building manufactured homes. Manufactured homes built according to these standards are commonly referred to as HUD-manufactured homes.
Congress included an express preemption clause when it passed the NMHCSSA:
Whenever a Federal manufactured home construction and safety standard[6] established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or continue in effect, with respect to any manufactured home covered,[7] any standard *1550 regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the federal manufactured home construction and safety standard.
42 U.S.C. § 5403(d) (footnotes added). Federal preemption is further evidenced in the regulations passed by HUD pursuant to the NMHCSSA:
No state or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The test of whether a state rule or action is valid or must give way is whether the state rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act.
24 C.F.R. § 3282.11(d).

3. Preemption under the NHMCSSA

There are very few cases which address the issue of preemption under the NMHCSSA. There are only two federal cases and a few state cases. The state cases, however, are not persuasive or even very useful, as discussed below.[8]
In Scurlock v. City of Lynn Haven, Florida, 858 F.2d 1521 (11th Cir.1988), the Eleventh Circuit affirmed a district court's order holding that a portion of the defendant city's municipal code was preempted by the NMHSCCA. There, the city's municipal code imposed a zoning regulation which excluded any home from the zone in question which did not meet the Southern Standard Building Code, the National Electrical Code, and the electrical code of the city (collectively referred to as the SSBC). The plaintiffs' manufactured home met HUD specifications but not the SSBC, which has stricter requirements. The Eleventh Circuit found that
[s]ince the City ordinance has greater safety requirements for a mobile home than the Federal Act, the ordinance must give way to the Act. The City cannot attempt land use and planning through the guise of a safety provision in an ordinance when that safety requirement is preempted by federal law.
Scurlock, 858 F.2d at 1525 (citation omitted). Scurlock demonstrates that if the relevant state or local law requires compliance with building or safety standards that differ from HUD regulations for manufactured homes, the law is preempted under the express language of § 5403(d).
Conversely, if the ordinance has no requirements pertaining to construction or safety, the preemption doctrine simply does not apply. An example of this latter case is presented in Texas Manufactured Housing Ass'n, Inc. v. City of Nederland, 905 F.Supp. 371 (E.D.Tex.1995). There, the federal district court examined the express preemption provision of the NHMCSSA as it applied to the defendant's ordinance. The court found that the ordinance regulated the "placement and installation of `trailer coaches' within the city limits" and had nothing to do with construction and safety standards. Id. at 375. Thus, the court found that the ordinance was not preempted by the NMHCSSA. Id.
Similarly, in City of Brookside Village v. Comeau, 633 S.W.2d 790 (Tex.), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), the state supreme court found the preemption doctrine was inapplicable because the relevant ordinances contained no *1551 building or safety standards or requirements that would conflict with the NMHCSSA. The ordinances, which pertained to location of mobile homes (Ord. 78) and the construction, operation and maintenance of mobile home parks (as opposed to mobile homes themselves), were upheld as "compatible with federal and state legislation." Brookside Village, 633 S.W.2d at 796.
In Gackler Land Co., Inc. v. Yankee Springs Township, 427 Mich. 562, 398 N.W.2d 393 (1986), the Michigan Supreme Court also found no preemption of zoning ordinances. There, however, the court ignored explicit language in the ordinances requiring compliance with "all pertinent building and fire codes" before a mobile home could be classified as a dwelling and installed in zones other than the mobile home parks. Gackler, 398 N.W.2d at 396. These "pertinent building and fire codes" may have involved construction and safety standards differing from the HUD regulations which should have invoked application of the preemption doctrine. The court, however, ignored this clause in the ordinances, finding that the "requirements of the zoning ordinances in the case at bar are not standards regulating the construction and safety of mobile homes." Id. at 401. In determining that the ordinances were not preempted under the NMHCSSA, the court focused instead on the "purpose" of the zoning ordinances:
[The ordinances] have for their purpose the regulation of where mobile homes may be placed and under what conditions. These requirements are for the purpose of regulating land use and therefore do not conflict with standards promulgated under the federal Manufactured Home Construction and Safety Standards Act. Accord Brookside Village v. Comeau, 633 S.W.2d 790 (Tex.1982), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).
Gackler, 398 N.W.2d at 401.
Gackler is poorly reasoned with respect to the preemption issue. All zoning ordinances have the purpose of regulating land use. Under the reasoning in Gackler, an ordinance could impose very strict building and safety standards for manufactured housing that clearly conflict with the HUD regulations but preemption would be inapplicable because of the ordinance's overall "purpose" of regulating land use.[9]

4. The Motions for Summary Judgment

The plaintiffs' basic contention is that the defendants are preventing them from selling manufactured homes by passing and enforcing zoning ordinances which restrict location and type of manufactured homes in their jurisdictions.
Two of the defendants, Fountain and Frederick, do not allow manufactured homes in any of their residential zones. In these towns, manufactured homes can only be placed in mobile home parks. The plaintiffs contend this is a per se exclusion and, thus, violates the Constitution, as discussed below.
The other defendants have mixed ordinances. Some allow HUD-manufactured homes in some of their residential zones but not others. Some allow manufactured homes in certain districts but only if they meet stricter building standards. These stricter standards most commonly are contained in the Uniform Building Code (UBC).[10] Manufactured homes built to the specifications of *1552 the UBC are commonly referred to as UBC-manufactured homes.
In their twentieth claim for relief, the plaintiffs contend that the defendants, except Fountain and Frederick, have enacted and enforced ordinances or established government policies that maintain construction and safety standards which are not identical to the federally mandated HUD provisions and, thus, are preempted by § 5403(d). Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, the plaintiffs seek a declaratory judgment that the construction and safety standards established by the defendants are invalid. The plaintiffs' twenty-first claim seeks injunctive relief on the same grounds.
Defendants Salida and Silt have moved for summary judgment on the issue of preemption, asserting their ordinances are not preempted because they do not impose construction or safety standards. Plaintiffs filed a cross-motion for summary judgment on this same issue, claiming Salida's and Silt's ordinances impose greater construction and safety standards by allowing manufactured homes to be installed in some zones but requiring that they meet the stricter UBC requirements[11] in violation of the explicit preemption clause of the NMHCSSA.

a. Silt's Zoning Ordinances

Plaintiffs claim, in their brief in support of their motion for summary judgment, that Silt requires compliance with the UBC in order for a manufactured home to be installed in Silt's residential zones. They argue that since the UBC requirements regarding construction and safety standards are different from those required by the HUD regulations, the ordinance is preempted by the NMHCSSA.
There are several different residential zoning districts in Silt. See Silt, Co.Mun.Code § 17.12.010. "Single-family dwellings" are allowed in each of these districts. Silt, Co. Mun.Code §§ 17.14.020(A), 17.16.020(A), 17.20.020(A), 17.24.020(A). "Single-family dwelling" means "a building arranged or designed to be occupied by one family." Silt, Co. Mun.Code § 17.08.390. "Manufactured housing" is defined as "any single-family dwelling" which, among other requirements, "[m]eets or exceeds ... such standards as may ... be established by the municipal building code ...." Silt, Co.Mun.Code § 17.08.215(f).
The "municipal building code" in Silt is the Uniform Building Code. Silt specifically adopted the UBC as its own; adding only additional definitional information concerning snow loads and frost lines. See Silt, Co.Mun. Code § 15.04.010.
As single family dwellings, manufactured homes are allowed in the primary residential zones in Silt. But, by definition, the ordinances clearly require compliance with the UBC before a manufactured home can be installed in any of the residential zones. It is "undisputed that the relevant UBC standards are more stringent than the analogous HUD standards." Colorado Manufactured Housing Ass'n v. Pueblo County, 857 P.2d 507, 509 (Colo.App.1992). Whether the UBC standards for construction and safety are stricter is actually immaterial. As discussed above, under the preemption doctrine, any construction or safety standard that differs in any way from the relevant federal standard is invalid and must yield to the federal law. Required compliance with the UBC by Silt in this case for manufactured housing sets up a different, conflicting standard and, thus, it must be declared invalid under the *1553 preemption doctrine. See Scurlock, supra, 858 F.2d at 1525.[12]

b. Salida's Zoning Ordinances

Like Silt, Salida has adopted the UBC. See Salida, Co. Mun.Ord. No. 1993-28 (October 4, 1993). Salida's zoning ordinances require all buildings sited in the primary residential districts to conform to the UBC:
All dwellings or other structures used for human occupation which are placed within or erected upon this district shall conform to all terms and specifications of the Uniform Building Code in effect at the time of placement or erection.
Salida, Co. City Code §§ 9-5A-5(F), 9-5B-5(F), 9-5C-5(F). The question is whether the ordinances allow manufactured homes in these zones.
Uses by right in the primary residential zones in Salida include "single-family residences." Salida, Co. City Code §§ 9-5A-2(A), 9-5B-2(A), 9-5C-2(A). The zoning ordinances do not define "single-family residence" or "residence" but "single-family dwelling" is defined in "residential" terms:
A detached residential dwelling unit, other than a mobile home, designed for and occupied by one family.
Salida, Co. City Code § 9-2-2 at 4.
Both HUD-manufactured homes and UBC-manufactured homes are single-family dwellings or residences. HUD-manufactured homes include this term by definition:
Dwelling, Manufactured Home: (HUD Modular)
A single family dwelling which; (a) is partially or entirely manufactured in a factory; (b) is not less than twenty four feet (24') in width and thirty six feet (36') in length; (c) is installed on a permanent foundation conforming with the Uniform Building Code as adopted by the City; (d) has brick, wood or cosmetically equivalent exterior siding and a pitched roof; and (e) is certified pursuant to the [NMHCSSA].
Salida, Co. City Code § 9-2-2.
UBC-manufactured homes are also referred to as "dwellings." Salida, Co. City Code § 9-2-2 at 4. These homes, however, "must meet minimum construction requirements of the Uniform Building Code as adopted by the City." Salida, Co. City Code § 9-2-2 at 4.
Clearly, manufactured homes are permitted in Salida's primary residential zones. But such homes must conform to the UBC. Salida, Co. City Code §§ 9-5A-5(F), 9-5B-5F, 9-5C-5F. This requirement for different construction and safety standards, contained in the UBC, conflicts with the standards promulgated by HUD pursuant to the NMHCSSA. Accordingly, the preemption doctrine requires that this conflicting local requirement be declared invalid.

D. STATE PREEMPTION OF LOCAL ZONING ORDINANCES.

Defendant City of Fountain has moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Plaintiff's twenty-seventh and twenty-eighth claims for relief in the Third Amended Complaint. Plaintiffs seek to have Fountain's zoning ordinances set aside on the ground that the ordinances conflict with a state statute and, thus, are preempted. These state claims are brought under the court's pendent jurisdiction.
There is no apparent conflict, however, between the state statute and the City of Fountain's zoning ordinances. This issue is novel under Colorado law and, ordinarily, declination of pendent jurisdiction would be prudent. A decision can be made, however, without setting new precedent for the state.
The state statute in question provides as follows:
No municipality shall have or enact zoning regulations, or any other regulation affecting development which exclude or have the effect of excluding manufactured homes *1554 from the municipality if such homes meet or exceed, on an equivalent basis, standards established by the municipal building code.
Colo.Rev.Stat. § 31-23-301(5)(b)(I).
In the City of Fountain, manufactured homes are restricted to a special zone called the "MHPS Mobile Home Park and Mobile Home Subdivision District." Fountain, Co. Zoning Ord. §§ 17.08.040, 17.08.120. The plaintiffs contend the ordinances which restrict manufactured homes to the MHPS zone conflict with Colo.Rev.Stat. § 31-23-301(5)(b)(I), set forth above.
Examination of the plain wording of the statute and the ordinances does not reveal any apparent conflict. The state statute prohibits a municipality from "excluding manufactured homes." Colo.Rev.Stat. § 31-23-301(5)(b)(I). The City of Fountain does not, however, prohibit installation of manufactured homes in the city. They are permitted, but only in the special zone. There being no apparent conflict between the state statute and the ordinances, preemption is inapplicable. See Texas Manufactured Housing Ass'n, Inc. v. City of Nederland, 905 F.Supp. 371, 377 (E.D.Tex.1995) (ordinance not preempted by state statute; "the statute does not command cities to allow the HUD-code manufactured homes in `all areas' of their cities"). The City of Fountain's motion to dismiss is granted.

E. CONSTITUTIONAL DEPRIVATIONS.

The plaintiffs have moved for summary judgment against defendants Fountain and Frederick on constitutional grounds. They contend the zoning ordinances of these municipalities constitute an invalid exercise of police power and fail to conform to the requirements of substantive due process and equal protection of the law. Defendant City of Fountain responds by asserting there are several rational bases for its ordinances and, thus, no constitutional violations. Defendant Town of Frederick disputes the plaintiffs' claim that its ordinances exclude manufactured homes from the primary residential areas. Frederick also contends there are disputed issues of fact surrounding the constitutionality of the ordinances and, thus, summary judgment is inappropriate.
It is well-settled that "[m]unicipalities may zone land to pursue any number of legitimate objectives related to the health, safety, morals, or general welfare of the community." Scurlock, 858 F.2d at 1525; Texas Manufactured Housing, 905 F.Supp. at 377. The police power of a municipality is very broad and the objectives of zoning ordinances can be many and varied. The Colorado State Legislature has recognized some of these purposes as follows:
Such [zoning] regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, floodwaters, and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population; to promote energy conservation; and to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.
Colo.Rev.Stat. § 31-23-303(1). See also Bourgeois v. Parish of St. Tammany, La., 628 F.Supp. 159, 161 (E.D.La.1986) (zoning objectives can include "abating undesirable conditions" and "aesthetic concerns").
In the instant case, the defendants argue they should be able to decide where manufactured houses can be located in their towns. They contend manufactured housing is not viewed as compatible with stick-built homes; manufactured homes are not taxed as highly; they tend to deteriorate more quickly; and they do not fit in with the towns' comprehensive plans to improve the aesthetics of the municipality, the tax base, and town services. These are all potentially legitimate objectives. Whether or not they are reasonable under the circumstances is the pivotal question in this case.
*1555 "[L]egislated zoning ordinances are permissible, constitutional uses of police power and are not reviewable by district courts unless they are `clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" Grant, 817 F.2d at 736 (Appendix) (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 120, 71 L.Ed. 303 (1926)). It is "not the function of federal district courts to serve as zoning appeal boards ...." Nasser v. City of Homewood, 671 F.2d 432, 440 (11th Cir.1982) (citing South Gwinnett Venture v. Pruitt, 491 F.2d 5, 6 (5th Cir.) (en banc), cert. denied, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)). "Federal judicial interference with a zoning ordinance is proper only if the governmental body could have no legitimate reason for its decision." Texas Manufactured Housing, 905 F.Supp. at 378 (citations omitted). Courts should give "extreme deference to legislative determinations of community needs and solutions" in reviewing zoning ordinances. Bourgeois, supra, 628 F.Supp. at 161 (citations omitted). The plaintiff bears a very heavy burden to demonstrate that an ordinance is invalid. Id.
Here, as discussed above, the defendants have alluded to many reasons for their zoning schemes in their briefs. There is very little evidence that has been presented on this issue, however. Additionally, the parties are disputing many of the "facts" underlying the reasons for the ordinances and, thus, the reasonableness of the ordinances.
Since there are genuine issues regarding material facts, I cannot determine whether the zoning ordinances are "clearly arbitrary and unreasonable." Therefore, the plaintiffs' motion for summary judgment on the issue of the constitutionality of Fountain's and Frederick's ordinances is denied.

F. VIOLATION OF THE COMMERCE CLAUSE.

The plaintiffs claim in their Third Amended Complaint that the defendants' restrictive zoning ordinances regarding manufactured homes improperly burden interstate commerce and, thus, violate the Commerce Clause.
In Blue Circle Cement, Inc. v. Board of County Commissioners of County of Rogers, 27 F.3d 1499 (10th Cir.1994), the Tenth Circuit set forth the applicable standard for cases, such as this one, where the plaintiff relies on the "dormant" Commerce Clause to attack the constitutionality of a zoning ordinance. The "dormant Commerce Clause ... prohibits a state or local `statute [that] regulates evenhandedly to effectuate a legitimate local public interest' if it imposes a burden on interstate commerce that is `clearly excessive in relation to the putative local benefits.'" Blue Circle, 27 F.3d at 1511 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). There is a balancing test that is used to measure the local regulation when challenged under the "dormant" Commerce Clause. Under this test, a court must scrutinize
(1) the nature of the putative local benefits advanced by the Ordinance; (2) the burden the Ordinance imposes on interstate commerce; (3) whether the burden is "clearly excessive in relation to" the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce.
Blue Circle, 27 F.3d at 1512 (quoting Pike, supra, 397 U.S. at 142, 90 S.Ct. at 847) (footnotes omitted).
There is not enough evidence presented to proceed on this issue. There is some evidence regarding the putative purposes of the ordinances but the parties dispute whether there is any burden on interstate commerce and whether any such burden is excessive in relation to the local benefits. The parties have not offered much more than conclusory statements in their briefs to support their positions. Therefore, the summary judgment motions filed by defendants Fountain, Salida and Silt are denied with respect to the Commerce Clause issue.[13]

*1556 CONCLUSION

For the aforesaid reasons,
IT IS ORDERED THAT:
1. Defendant Fountain's motion for summary judgment is DENIED;
2. Defendant Salida's motion for summary judgment is DENIED;
3. Defendant Silt's motion for summary judgment is DENIED;
4. Plaintiffs' motion for summary judgment against Silt, Salida, Fountain and Frederick is GRANTED in part and DENIED in part. Salida's and Silt's zoning ordinances are preempted under federal law. Summary judgment on the constitutional claims is DENIED;
5. Defendant Fountain's motion to dismiss is GRANTED;
6. Defendant Sterling's motion for summary judgment is DENIED AS MOOT since plaintiffs lack standing with respect to this defendant. All claims against Sterling are DISMISSED;
7. Plaintiffs' motions for summary judgment against Garfield County and Sterling are DENIED because there is a stay in effect regarding Garfield County and the plaintiffs lack standing with regard to Sterling;
8. Defendants Salida's and Silt's Motion to Strike Testimony is DENIED AS MOOT;
9. Defendants Salida's and Silt's Motion for Leave to File a Reply in Support of Motion to Strike Testimony is GRANTED;
10. Similarly, defendant Fountain's Motion for Leave to File Reply to its Motion to Dismiss is GRANTED.
The only motions remaining to be decided are Defendant Garfield's Motion to Enforce Settlement and Objection to Magistrate's Ruling on Motion to Enforce Settlement. There is a stay in effect with regard to Defendant Garfield as noted in footnote 5 above.
In view of the foregoing rulings, this matter is remanded to the magistrate judge for reconsideration of the pending motions not decided or mooted by this memorandum opinion and to convene a pretrial conference and prepare a pretrial order.
NOTES
[1] This issue is raised in four of the motions for summary judgment; those of Fountain, Salida, Silt, and Sterling.
[2] The Trujillos terminated the contract for other reasons as well but the failure to obtain a permit was a major factor. See Def. Salida's Resp. to Pls.' Mot. for Summ. J., Ex. A (lack of permit was the first reason given by the Trujillo's attorney in letter to defendant seeking to void the contract and retrieve the deposit money).
[3] Plaintiffs provided a listing of all members of CMHA in an Exhibit to Plaintiff's Response to Defendant City of Fountain's Motion for Summary Judgment.
[4] (a) Defendant City of Fountain's Motion for Summary Judgment; (b) Defendant City of Silt's Motion for Summary Judgment; (c) Defendant City of Salida's Motion for Summary Judgment; (d) Plaintiff's Motion for Summary Judgment Regarding Defendants Silt, Salida, Fountain, and Frederick; (e) Plaintiff's Motion for Summary Judgment Regarding Defendants Garfield County and the City of Sterling; and (f) Defendant City of Sterling's Motion for Summary Judgment.

Since the plaintiffs lack standing in this case vis-à-vis Defendant City of Sterling, as discussed above, and any claims against that defendant should be dismissed, I have not addressed any of the motions involving Sterling. I also did not address the motion regarding Defendant Garfield County because there is a stay in effect regarding that defendant. The stay was ordered on December 15, 1994 pending finalization of settlement. On July 11, 1995, Magistrate Judge Pringle continued the stay indefinitely. Garfield has an outstanding motion concerning settlement which must be decided first.
[5] N.B. In English law, preemption was the right of the Crown to purchase its necessaries before all others.
[6] "Construction and safety standard" is defined as "a reasonable standard for the construction, design, and performance of a manufactured home which meets the needs of the public including the need for quality, durability, and safety." 42 U.S.C. § 5402(7).
[7] "Manufactured Home" is defined as "a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein; except that such term shall include any structure which meets all the requirements of this paragraph except the size requirements and with respect to which the manufacturer voluntarily files a certification required by the Secretary and complies with the standards established under this chapter". 42 U.S.C. § 5402(6).
[8] Some of the cases cited by the parties are not even preemption cases. See Duggins v. Town of Walnut Cove, 63 N.C.App. 684, 306 S.E.2d 186 (N.C.App.), review den., 309 N.C. 819, 310 S.E.2d 348 (1983), appeal dism., 466 U.S. 946, 104 S.Ct. 2145, 80 L.Ed.2d 532 (1984) (challenge on constitutional grounds); Village of Moscow v. Skeene, 65 Ohio App.3d 785, 585 N.E.2d 493 (12 Dist. 1989) (the lower court never ruled on preemption; appeal on that issue "misplaced"); Robinson Township v. Knoll, 410 Mich. 293, 302 N.W.2d 146 (Mich.1981) (challenge on other constitutional grounds; not preemption).
[9] The defendants in the instant case have placed great emphasis on Gackler's language regarding "purpose" and have vigorously argued that the preemption doctrine is inapplicable because the purpose of their zoning ordinances is to regulate land use, not to impose different construction and safety standards. As discussed above, Gackler is not a well-reasoned case and provides no legitimate standard for decision on this issue. There is nothing in the case law that supports the notion that if a municipality can come up with a good reason for its conflicting law, the court will overlook the conflict and find there is no preemption. Under the preemption doctrine, if the local and federal laws conflict, the local law is invalid and must be set aside. See Cipollone, 505 U.S. at 516, 112 S.Ct. at 2617 ("state law that conflicts with federal law is `without effect.'"). Either there is a conflict requiring preemption, or no conflict and, thus, no preemption.
[10] It is "undisputed that the relevant UBC standards are more stringent than the analogous HUD standards" in terms of manufactured home construction, design, and safety standards. Colorado Manufactured Housing Ass'n v. Pueblo County, 857 P.2d 507, 509 (Colo.App.1992).
[11] The cross-motions for summary judgment filed by the plaintiffs and defendant Sterling on the issue of preemption of Sterling's ordinance are not considered at this time because the plaintiffs lack standing vis-à-vis Sterling. Similarly, the cross-motions regarding defendant Garfield County are set aside until the stay which is still in effect regarding Garfield County is resolved.

Defendant City of Fountain has also filed a motion for summary judgment regarding preemption. This motion was filed shortly before the Plaintiffs filed their Third Amended Complaint which deleted any federal preemption claim against Fountain. There are new claims against Fountain in the Third Amended Complaint but those assert that Fountain's zoning ordinances are preempted by a state statute. Accordingly, that part of Fountain's motion for summary judgment which deals with federal preemption is moot.
[12] Both Salida and Silt have moved to strike as an exhibit a letter written by a HUD official regarding federal preemption under the NMHSCCA which was submitted by the plaintiffs. There is no need to consider this exhibit in making a decision on the issue of preemption and I do not consider it. The motion is denied as moot.
[13] Sterling's motion for summary judgment on this issue was not considered since the plaintiffs lack standing vis-a-vis Sterling.